# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROSE M. CANNATA, ) | |
| ) | |
| Plaintiff, ) | No. 17 cv 4577 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| NANCY A. BERRYHILL, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In the instant matter, Plaintiff Rose Cannata ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits under Title II of the Social Security Act. [Dkt. 1.] The Parties have filed cross-motions for summary judgment. For the reasons below, the Court remands this matter for further proceedings consistent with this Memorandum Opinion and Order. Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [dkt. 17], construed as a motion for summary judgment, is granted; the Commissioner's Motion for Summary Judgment [dkt. 25] is denied.

## I.  Background[1]

On September 28, 2013, Plaintiff filed both an application for disability benefits and an application for supplemental security benefits. [Administrative Record ("R") 197-204.] Plaintiff alleged an onset date of disability as of January 1, 2007. [R 197, 199.] Plaintiff's date last insured ("DLI") is September 30, 2011. [R 18.] Plaintiff's claims were denied initially and upon reconsideration; Plaintiff then requested an administrative hearing, held on February 29, 2016 before Administrative Law Judge ("ALJ") Kevin Plunkett. [R 34-72.] Plaintiff was represented by counsel, and a Vocational Expert testified. *Id.* At the administrative hearing, Plaintiff amended her disability onset date to September

---

[1]  The Court limits its discussion of the factual background of this case relevant to the analysis provided herein.

29, 2011. [R 18, 71.]

Plaintiff was born in 1960. [R 197.] For purposes of this opinion, Plaintiff's significant medical history includes uncontrolled Type II diabetes mellitus. [R 413, 480.] Plaintiff was diagnosed with diabetes in approximately 1998. [R 480.] On at least one occasion, Plaintiff presented to a routine care clinic who sent her to the emergency department as she had an alarmingly high blood sugar level over 500.[2] [R 410.] On that occasion, Plaintiff reported to emergency department personnel that she had stopped taking her insulin because she could not afford the medication. *Id.* Plaintiff's diabetes presents with neuropathy (nerve pain), and Plaintiff testified that the neuropathy in her feet, knees, back, and arms makes it hard to stand or sit for extended periods of time. [R 20, 39-40.]

Additionally, Plaintiff is obese and has degenerative disc disease, osteoarthritis of the left shoulder and bilateral knees, anxiety, and depression. [R 20.] When discussing her medical history at the administrative hearing, Plaintiff testified that on three separate occasions she was unable to obtain certain medical treatments because a medical provider would not accept her insurance. [R 47-49.] Finally, Plaintiff has asthma and chronic obstructive pulmonary disease ("COPD"), and she is an every day smoker with a pack-a-day habit. [R 20, 380, 388, 480.]

On April 13, 2016, the ALJ issued a written decision denying Plaintiff disability benefits. [R 18-27.] At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since her alleged onset date of September 29, 2011, through her DLI. [R 20.] At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease; obesity; osteoarthritis of the left shoulder and bilateral knees; diabetes with neuropathy; chronic obstructive pulmonary disease (COPD); anxiety and depression. *Id.* The ALJ determined that Plaintiff's hypertension and hepatitis C were nonsevere impairments. [R 21.] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

---

[2] A normal blood normal blood sugar reading is 80-120. *Hahn v. Walsh*, 762 F.3d 617, n. 7 (7th Cir. 2014).

2

listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R 21-22.]

> Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to
>
> > perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally overhead reach and frequently reach in all other directions with the left upper extremity; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch and crawl; the claimant can perform simple, routine tasks and use judgment to make simple work-related decisions; frequently respond appropriately to supervisors, coworkers and the public and frequently deal with changes in the work setting.

[R 22.] At step four, the ALJ found Plaintiff able to perform her past relevant work as a deli slicer. [R 26.] Therefore, the ALJ found Plaintiff not disabled under the Act. [R 27.]

Plaintiff appealed, and on April 17, 2017, the Appeals Council denied Plaintiff's appeal, making the ALJ's decision the final decision of the Commissioner. [R 1-6.] Plaintiff filed the instant action on June 19, 2017. [Dkt. 1.]

## II.     Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type

---

[3]     RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

On appeal Plaintiff argues, *inter alia*, that the ALJ did not properly consider Plaintiff's failure to seek greater treatment in conjunction with her ability to afford such treatment, and that this constitutes reversible error. We agree.

Under Social Security Ruling 16-3p, governing an ALJ's evaluation of symptoms in disability claims, the Social Security Administration

> will not find an individual's symptoms inconsistent with the evidence in the record [based on the frequency or extent of the treatment sought] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints…When we consider the individual's treatment history, we may consider…[that a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services.

SSR 16-3p(2)(d).

Here, in evaluating Plaintiff's symptoms, the ALJ failed to note that Plaintiff testified at the administrative hearing to three separate occasions where she was unable to obtain certain medical

treatment based on the provider not accepting her medical insurance. [R 48 regarding an MRI on her upper right arm; R 48 for hernia; and R 49 for a specialty colon polyp surgeon.][4] Plaintiff's records further reflect that she told medical providers she could not afford her diabetes medications. [R 410.] While the ALJ twice mentioned that Plaintiff was unable to afford her diabetes medications [R 24], he neglected any mention of insurance in his decision. Although the ALJ was within his rights to reject Plaintiff's explanations, he was not at liberty to ignore them completely as he did here. *Lockwood v. Colvin*, 2016 WL 2622325, at *3 (N.D. Ill. May 9, 2016).

If the ALJ disbelieves Plaintiff's proffered explanations for her failure to see certain specialists, or finds those reasons insufficient to explain her "extremely conservative" treatment history, the ALJ is required to explain why. *Jones v. Colvin*, 2016 WL 4798956, at *5 (N.D. Ill. Sept. 14, 2016). The ALJ "is not free to base his symptom evaluation on Plaintiff's lack of medical care while omitting any discussion of evidence about Plaintiff's reasons for not seeking treatment." *Id.* (citing *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (Where ALJ discredited claimant's testimony based on a lack of treatment but overlooked evidence about her reasons, the "failure to explore [the] evidence was a legal error."); *see also Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (ALJ must not draw inferences about a claimant's condition from a failure to seek care unless ALJ has explored claimant's explanations as to lack of medical care). The ALJ not only failed to mention any reason Plaintiff might have such an "extremely conservative" treatment history (*i.e.*, inability to afford it), but he also did not ask Plaintiff about or engage in a discussion of the free or low-cost medical services to which she might have had access, in violation of the mandates of SSR 16-3p(2)(d) and judicial precedent. As the ALJ's decision lacks an adequate discussion of the issues, it must be remanded on this basis. *Lopez ex rel. Lopez v.*

---

[4] While the ALJ did seek additional details at the administrative hearing when Plaintiff mentioned she had not yet had an MRI, this caused Plaintiff to discuss her insurance dilemma, in response to which the ALJ asked no further questions about the insurance coverage. [R 47-49.] It appears from the Seventh Circuit's *Roddy v. Astrue* decision that this might not have been enough of a probing by the ALJ in response to Plaintiff's testimony concerning her inability to afford treatment. *See Roddy v. Astrue*, 705 F.3d 631, 638-39 (7th Cir. 2013).

*Barnhart*, 336 F.3d 535,539 (7th Cir. 2003).

Moreover, when the ALJ did mention Plaintiff's inability to afford her diabetes medications, the ALJ implied that Plaintiff should have been able to afford her diabetes medications but instead spent that money on cigarettes. To wit, the ALJ noted that "[d]espite having asthma and reporting she was unable to afford her diabetes medications, she stated she continued to smoke cigarettes." [R 24.] While other courts may find it proper for an ALJ to discount claims of an inability to afford treatment solely in light of a claimant's ability to afford to smoke cigarettes, precedent in the Northern District of Illinois is more nuanced in that it dictates that it is error for an ALJ to discount testimony about an inability to afford treatment when a claimant continues to purchase cigarettes where the record does not establish that quitting smoking would enable a claimant to return to work.[5] Perhaps if the ALJ was explicit instead of implicit in this statement (*e.g.*, that Plaintiff continued to smoke cigarettes *despite their associated financial cost*), or if the ALJ had discussed whether any of Plaintiff's ailments would have resolved via smoking cessation to such a level she could sustain competitive employment, the Court's discussion on this point might have veered in a different direction. In addition to the fact the ALJ isn't explicit in this sentence as to whether his concern really is the inability to pay for medications despite affording to smoke cigarettes, we note that the ALJ muddled his (potentially implied) financial point by injecting his concern that smoking detracted from Plaintiff's claimed respiratory issues when he

---

[5] *Compare Suess v. Colvin*, 945 F. Supp. 2d 920, 930-31 (N.D. Ill. 2013) (finding error where ALJ failed to address evidence of financial hardship and stated that plaintiff "claims she has no money to have gotten other treatment [for her anxiety], but she continues to smoke one-half to three-fourths a pack of cigarettes a day," because although record demonstrated smoking cessation might help with erratic sleep, there was no evidence that quitting smoking would alleviate multiple other ailments) (citing *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir.2000) and *Rousey v. Heckler*, 771 F.2d 1065, 1069-70 (7th Cir.1985)) *with Wishard v. Colvin*, 2017 WL 4570748, at *7 (S.D. Tex. Sept. 25, 2017), report and recommendation adopted, 2017 WL 4551376 (S.D. Tex. Oct. 12, 2017) (while recognizing the addictive nature of smoking, upholding decision wherein ALJ considered the inconsistency of plaintiff's ability to financially maintain well-documented smoking habit despite alleging inability to afford prescribed medications and treatment); *Rinaldi v. Berryhill*, 2017 WL 4003384, at *4 (D.S.C. Sept. 12, 2017) (collecting cases) (finding that substantial evidence supported ALJ's consideration of plaintiff's smoking habit as one factor related to ability to afford treatment); *Buckley v. Comm'r of Soc. Sec. Admin.*, 2015 WL 3536622, at *21 (D.S.C. June 4, 2015) (finding no error where ALJ considered Plaintiff's explanation and provided reasons for rejecting it when he noted that medical records indicated Plaintiff "smoked cigarettes daily" despite their "associated financial cost").

mentioned her asthma. *See Dozier v. Colvin*, 2015 WL 4726949, at *4 (D.S.C. Aug. 10, 2015). The ALJ has not offered any testimony from Plaintiff that would support questioning her claim of inability to afford treatment. Instead, the ALJ mentioned in an offhand way that he doubted Plaintiff's claims of an inability to pay for medical treatment in light of her smoking cigarettes,[6] and failed to mention her testimony concerning multiple actual instances where medical providers allegedly refused her insurance rendering her unable to seek certain medical treatments.

Finally, we note that the Commissioner's only response to Plaintiff's argument that the ALJ failed to properly consider Plaintiff's failure to seek greater treatment in conjunction with her ability to afford such treatment is a *single sentence* pointing out how the record is clear that Plaintiff's treatment was conservative because she never saw never saw an orthopedic doctor, neurologist or pain management specialist. [Dkt. 26, p. 11.] This response misses the mark and does not explain how the ALJ met his obligations to discuss the reasons for Plaintiff's conservative treatment or was excused from providing an explanation on this point. While it is indeed true Plaintiff never saw doctors within these specialties, the record is replete with financially-based explanations for Plaintiff's failure to obtain more intensive treatment for her various ailments, which the ALJ neglected to mention.

On remand, the ALJ should consider the relevant factors listed in SSR 16-3p before relying on Plaintiff's "extremely conservative" treatment to discount her reports about her subjective symptoms, and the ALJ should make factual findings regarding Plaintiff's financial/insurance situation and its impact on her ability to seek medical treatment. To the extent the ALJ finds that Plaintiff's lack of medical treatment negatively affects her subjective symptom evaluation, the ALJ should refer

---

[6] As to a subjective symptom analysis that rests on a claimant's failure to quit smoking, the Seventh Circuit has not looked kindly: "[g]iven the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health. One does not need to look far to see persons with emphysema or lung cancer – directly caused by smoking – who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop. This is an unreliable basis on which to rest a credibility determination." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000).

specifically to the evidence that informs his conclusions, taking care that he does not penalize her for failing to seek treatment she could not afford.

**IV.     Conclusion**

Because the ALJ's opinion lacks an adequate discussion of the issues, the Court must reverse and remand for proceedings consistent with this opinion. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's Motion for Summary Judgment [dkt. 17] is granted; the Commissioner's Motion for Summary Judgment [dkt. 25] is denied.

Entered: 7/25/2018

_____

U.S. Magistrate Judge, Susan E. Cox